[Cite as *State v. Johnson*, 2018-Ohio-3720.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 17CA3615 |
| v. | : | |
| | | DECISION AND |
| JOHNATHAN D. JOHNSON, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED: 09/17/2018 |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Allen Vender, Assistant Ohio Public Defender, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Hoover, P.J.

{¶1} Defendant-appellant, Johnathan D. Johnson ("Johnson"), appeals the judgment of the Ross County Court of Common Pleas, which convicted him of felonious assault and sentenced him to five years of incarceration. On appeal, Johnson contends that the trial court erred in denying his motion for mistrial and that his conviction was against the manifest weight of the evidence. The State argues that the error that occurred in Johnson's trial did not warrant a mistrial and that the jury did not lose its way in convicting Johnson of felonious assault. For the following reasons, we find that the trial court did not abuse its discretion in denying Johnson's motion for a mistrial and that Johnson's conviction was not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶2}     Karrin Harris ("Harris") and Johnson began dating in May 2010. In July 2016, Harris and Johnson stopped living together. Harris testified that the relationship had ended at this time; but Johnson believed that the two were still romantically involved on the date of the incident. Because Harris and Johnson were co-parenting their four year-old child, J.H., they continued to see each other frequently. At the time of the incident, Harris resided in Ross County with her two children, D.B. and J.H.

{¶3}     On February 2, 2017, Harris came home from work at 3:30 p.m., fed her children, and took a nap on the couch. Johnson went to Harris's house after work, arriving around 4:30 p.m. Harris was still asleep when Johnson entered the house and located her cell phone. According to his testimony, Johnson wanted to go through Harris's phone because he believed she was talking to other men. Since the battery was low, Johnson took Harris's phone back to his home so he could charge it and review the messages.

{¶4}     Harris awoke when Johnson slammed the front door on his way out. Johnson testified that he went back to Harris's house to return her cell phone after Harris had attempted to call the cell phone from her house phone. Harris and Johnson give two different accounts of the events that occurred after Johnson returned to Harris's house.

{¶5}     According to Johnson, Harris was upset that he had taken her phone and tried to take the phone back from him. Johnson testified that he held the phone away from Harris and pushed her, causing her to fall. Johnson became upset and slammed the phone on the floor, breaking it. Next, Harris pushed Johnson; and Johnson pushed Harris back, causing her to fall once more. Johnson testified that their son, J.H., came into the room at this point; and the scuffle ended. According to Johnson, he and Harris sat on the couch and reconciled. During their conversation, Harris asked Johnson to pick up her older son, D.B., from his basketball game,

which Johnson recalls doing at 10:27 p.m. When Johnson dropped D.B. off, he apologized to Harris for what had happened and then left.

{¶6}     Harris's version of events differs. According to Harris, Johnson came in yelling about what he had found on her cell phone and began to beat her. Harris testified that Johnson punched her, kicked her, spit in her face, threatened her with knives, knocked her down, choked her, and hit her with objects, including a baby's walker. Johnson also prevented Harris from leaving the house. Harris stated that she did nothing to Johnson except use her feet to push him off of her several times when she thought she was going to pass out from being choked. Harris testified that the incident seemed like it went on forever. According to Harris, the assault continued even after Harris and Johnson's son, J.H., came into the room. The incident did not end until Harris asked Johnson to pick up her older son, D.B., from his basketball game sometime around 9:00 p.m. Johnson returned to the house with D.B. and found Harris in her bedroom, where the two spoke. At this point, Harris felt like her "eyeball was hanging out of [its] socket." Johnson left Harris's house after the conversation.

{¶7}     On February 3, 2017 after D.B. went to school, Harris took J.H. and drove to her parents' house. Harris's mother, Karen Harris, testified that Harris was hysterical and her eye was swollen shut. After calming her daughter down, Karen Harris called her husband, Obadiah Harris, and her sister, Cheryl Beverly. Cheryl Beverly then called the police. Officer Monique Lee ("Officer Lee") of the Chillicothe Police Department responded to the call.

{¶8}     Harris was taken to the Adena Regional Medical Center in Chillicothe, Ohio, where Steven McKee, M.D., ("Dr. McKee"), observed her in the Emergency Room. Dr. McKee testified that Harris presented with injuries to her left eye, right elbow, chest wall, neck, and abdomen. After examining Harris, Dr. McKee diagnosed her with a nondisplaced fracture of the

inferior medial orbital wall. Due to the traumatic injury to her eye, Harris was later transferred to the Ohio State University Wexner Medical Center in Columbus, Ohio. However, Harris's injuries did not require surgery.

{¶9}    On February 24, 2017, the Ross County Grand Jury issued a two-count indictment charging Johnson with Count 1: Kidnapping, in violation of R.C. 2905.01, a felony of the first degree, and Count 2: Felonious Assault, in violation of R.C. 2903.11, a felony of the second degree. Johnson was arraigned on the charges in March 2017, where he retained counsel and entered not guilty pleas.

{¶10}   A trial was held over the course of two days, beginning July 11, 2017. After deliberations, the jury returned a verdict of not guilty as to Count 1: Kidnapping and a verdict of guilty as to Count 2: Felonious Assault. Thereafter, the trial court sentenced Johnson to five years of incarceration with jail credit granted for time spent in custody prior to sentencing.

## II. Assignment of Errors

{¶11}   On appeal, Johnson assigns the following errors for our review:

Assignment of Error I:

> The trial court violated Johnathan Johnson's due process rights and abused its discretion when it denied Mr. Johnson's request for a mistrial based upon the irrelevant suggestion that Johnson had violated a temporary protection order. Fifth and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Sections 10 and 16; *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001); *State v. Pleasant*, 5th Dist. Stark No. 1998 CA 00044, 1998 Ohio App. LEXIS 3998 (Aug. 3, 1998); Evid.R. 401; Evid.R. 403(A); Evid.R. 404(B); Tr. 213-20.

Assignment of Error II:

> The trial court violated Johnathan Johnson's rights to due process and a fair trial when it entered a judgment of conviction for felonious assault against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Section 16; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); August 25, 2017, Judgment Entry.

**III. Law and Analysis**

**A. The Trial Court Did Not Abuse Its Discretion in Denying Johnson's Motion for Mistrial**

{¶12}  In his first assignment of error, Johnson contends that the trial court erred in overruling his request for a mistrial. Specifically, Johnson argues that Officer Lee's testimony, which mentioned that Johnson was arrested for violating a temporary protection order, was prejudicial error requiring a mistrial.

{¶13}  Whether or not to grant a mistrial is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 26, citing *State v. Daniels*, 4th Dist. Scioto No. 11CA3423, 2011-Ohio-5603, ¶ 10. An abuse of discretion occurs when the trial court makes a decision that is unreasonable, arbitrary, or unconscionable. *Id.* "In general[,] a mistrial should not be granted based on an error or irregularity unless an accused's substantial rights are adversely affected." *Id.* at ¶ 27.

{¶14}  "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).  The Ohio Supreme Court has found that a brief, isolated remark followed promptly by a curative instruction does not necessitate a mistrial. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 175; *Garner* at 59; *State v. Treesh*, 90 Ohio St.3d 460, 482-483, 739 N.E.2d 749 (2001). *See also State v. Meddock*, 2017-Ohio-4414, 93 N.E.3d 43, ¶ 48 (4th Dist.).

{¶15}  During direct examination, Officer Lee testified as follows:

Q. DID YOU HAVE AN OPPORTUNITY TO TALK WITH THE

DEFENDANT?

A. YES.

Q. WHEN?

A. AFTER HE HAD BEEN APPREHENDED IN THE JAIL.

Q. WHEN WAS THAT?

A. I'M NOT SURE.

Q. WAS IT THAT DAY?

A. NO.

Q. WHAT DAY WAS IT?

A. I BELIEVE IT WAS THE DAY HE WAS ARRESTED FOR VIOLATING

HIS PROTECTION ORDER.

Johnson's trial counsel immediately objected on the grounds of relevancy and moved for a

mistrial. Counsel argued that the statement was irrelevant and prejudicial. The State conceded

that the testimony was irrelevant and inappropriate but argued that a curative instruction was the

appropriate remedy. The trial court noted that Officer Lee's statement did not specify a victim

and only mentioned an arrest, not a conviction. Consequently, the trial court held that the

statement was inadmissible, but that any prejudice could be remedied by issuing a curative

instruction. Accordingly, the trial court denied the motion for mistrial and issued the following

instruction to the jury:

THE COURT: * * * OFFICER MONIQUE LEE TESTIFIED THAT THE DAY

SHE TALKED TO THE DEFENDANT WAS THE DAY THAT HE WAS

ARRESTED FOR VIOLATING HIS PROTECTION ORDER. THIS

TESTIMONY IS NOT RELEVANT TO THE CHARGES IN THIS CASE. THE

TESTIMONY OF OFFICER LEE IS STRICKEN. YOU ARE TO DISREGARD

THIS TESTIMONY AND TREAT IT AS THOUGH YOU NEVER HEARD IT.

After the close of evidence, the trial court further instructed the jury that:

THE COURT: * * * QUESTIONS AND ANSWERS WHICH HAVE BEEN

STRICKEN BY THE COURT OR WHICH YOU WERE INSTRUCTED TO

DISREGARD AREN'T EVIDENCE AND MUST BE TREATED AS THOUGH

YOU NEVER HEARD THEM. YOU MUST NOT SPECULATE AS TO WHY

THE COURT SUSTAINED THE OBJECTION TO ANY QUESTION NOR

MAY YOU SPECULATE AS TO WHAT THE ANSWER TO SUCH A

QUESTION MIGHT HAVE BEEN. YOU MUST NOT DRAW ANY

INFERENCE OR SPECULATE ON THE TRUTH OF ANY SUGGESTION

INCLUDED IN A QUESTION THAT WASN'T ANSWERED.

{¶16} After reviewing the record, we find that the trial court promptly and clearly gave a curative instruction to the jury to disregard any mention of the temporary protection order. We also note that the statement at issue did not specify a victim and only mentioned an arrest. Moreover, nothing in the record rebuts the presumption that the jury followed the court's instruction and disregarded Officer Lee's testimony. Accordingly, the trial court's decision to deny Johnson's motion for a mistrial and to rely on a curative instruction was not an abuse of discretion. Johnson's first assignment of error is not well taken and is overruled.

**B. Johnson's Conviction Was Not Against the Manifest Weight of the Evidence**

{¶17} In his second assignment of error, Johnson contends that his conviction for felonious assault was against the manifest weight of the evidence. Johnson argues that Harris's testimony was implausible and inconsistent with the evidence in the record.

{¶18} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the

evidence, and consider the credibility of witnesses." *State v. Topping*, 4th Dist. Lawrence No.

11CA6, 2012-Ohio-5617, ¶ 60. "The reviewing court must bear in mind, however, that

credibility generally is an issue for the trier of fact to resolve." *Id.*, citing *State v. Issa*, 93 Ohio

St.3d 49, 67, 752 N.E.2d 904 (2001). This is because "[t]he trier of fact 'is best able to view the

witnesses and observe their demeanor, gestures, and voice inflections, and use these observations

in weighing the credibility of the proffered testimony.' " *State v. Picklesimer*, 4th Dist. Pickaway

No. 14CA17, 2015-Ohio-1965, ¶ 9, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77,

80, 461 N.E.2d 1273 (1984).

{¶19}   "Once the reviewing court finishes its examination, the court may reverse the

judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in

evidence, clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis*, 4th

Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 14.

{¶20}   If the prosecution presented substantial evidence upon which the trier of fact

reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense

had been established, the judgment of conviction is not against the manifest weight of the

evidence. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 16 (4th

Dist.). A reviewing court should find a conviction against the manifest weight of the evidence " '

only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State

v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio

App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See State v. Howard*, 4th Dist. Ross No.

07CA2948, 2007-Ohio-6331, ¶ 16 ("We will not intercede as long as the trier of fact has some

factual and rational basis for its determination of credibility and weight.").

{¶21} In the case sub judice, Johnson argues that the jury should have believed his testimony over Harris's.

{¶22} First, Johnson argues that Harris's injuries would have been more severe had Johnson been striking her with "full force," like she testified. We find no merit to Johnson's argument. At the Adena Regional Medical Center, Harris presented with injuries to her left eye, right elbow, chest wall, neck, and abdomen. Harris testified that Johnson punched her, kicked her, spit in her face, threatened her with knives, knocked her down, choked her, and hit her with objects. The medical evidence supports Harris's testimony. Dr. McKee opined that Harris's injuries were consistent with being punched, kicked, choked, and thrown to the ground.

{¶23} Second, Johnson argues that Harris's actions were inconsistent with those of a felonious assault victim. Specifically, Johnson points to: (1) Harris's willingness to have Johnson pick her son up from basketball practice; and (2) Harris's failure to call the police during or immediately after the incident. However, Harris explained her actions in her testimony.

{¶24} Harris asked Johnson to pick her older son up from basketball because she did not want her son to see her. Although her father could have picked her son up from basketball, Harris explained that she "didn't want [Johnson] to be in trouble[,] and [she] didn't want [her] dad to see [her] condition." Additionally, Harris testified that she knew Johnson would not harm her son, as he had never laid a hand on him before.

{¶25} When asked why she did not use the house phone to call the police during the incident, Harris testified that the phone "wasn't accessible" and that she was "not in the proper mental state." Harris states numerous times that, as a result of the assault, "[her] head was so messed up" that "[her] mind was kind of foggy." Harris did not act until the next morning, after her father came to take her older son to school. Again, Harris did not want her father or her son

to see her in her condition. Thereafter, Harris took her younger son and drove to her parent's home. At that time, Harris still did not call the police because she "didn't want [Johnson] to be in any trouble." Harris testified that she was concerned about protecting her family and avoiding confrontation.

{¶26} Last, Johnson argues that Harris has a history of making false claims about Johnson to law enforcement. In March 2015, Harris brought charges against Johnson for domestic violence, which were later dismissed. Harris testified that she overreacted but did not lie about what happened. According to Harris, "[Johnson] threatened [her] life in front of [her] children and chased [her] around," which frightened her. Again, Harris stated that she wanted the charges dismissed "because [she] didn't want [Johnson] to be in trouble."

{¶27} Here, the jury was faced with opposing versions of the events. As the triers of fact, they were free to believe all or part of any witnesses' testimony. " '[A] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Fletcher*, 4th Dist. Lawrence No. 14CA14, 2015-Ohio-1624, ¶ 28, quoting *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17 (4th Dist.). Reviewing the record as a whole, we cannot say that this is an exceptional case where the evidence weighs heavily against the conviction, that the trier of fact lost its way, or that a manifest miscarriage of justice has occurred. Accordingly, the verdict was not against the manifest weight of the evidence. Johnson's second assignment of error is overruled.

## IV. Conclusion

{¶28} Having overruled both of Johnson's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellee to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellee to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion

For the Court,

By: _____
　　　Marie Hoover
　　　Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**