[Cite as *State v. Tolle*, 2020-Ohio-935.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 19CA1095 |
| vs. | : | |
| MATTHEW TOLLE, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Brian T. Goldberg, Schuh & Goldberg, LLP, Cincinnati, Ohio, for appellant.[1]

C. David Kelley, Adams County Prosecuting Attorney, and Kris D. Blanton, Adams County Assistant Prosecuting Attorney, West Union, Ohio, for appellee.

CRIMINAL APPEAL FROM COUNTY COURT
DATE JOURNALIZED: 3-5-20
ABELE, J.

{¶ 1} This is an appeal of an Adams County Common Pleas Court judgment of conviction and sentence for two counts of murder pursuant to R.C. 2903.02(A) and (B). Matthew Tolle, defendant below and appellant herein, raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. TOLLE
BY IMPROPERLY INTERPRETING THE SELF-DEFENSE STATUTE
AND FAILING TO INSTRUCT THE JURY ON SELF DEFENSE[.]"

---

[1]Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. TOLLE BY ALLOWING EVIDENCE IN AT TRIAL THAT IS PROHIBITED BY OHIO RULES OF EVIDENCE 404(B)[.]"

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. TOLLE'S SIXTH AMENDMENT RIGHTS BY ENTERING JUDGEMENT [SIC] OF CONVICTION AFTER A TRIAL AT WHICH MR. TOLLE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE[.]"

FOURTH ASSIGNMENT OF ERROR:

"THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN MR. TOLLE'S CONVICTIONS[.]"

{¶ 2} Appellant and Klover Thatcher dated for approximately three years, had one child and intermittently resided together throughout the relationship. Around September 13, 2018, they ended their relationship.

{¶ 3} For several years, Thatcher was also friends with a man named Willard Lowe. Thatcher testified that Lowe was not her boyfriend, but sometimes they spent the night in the same room.

{¶ 4} On September 24, 2018, law enforcement officers visited Thatcher's residence when she claimed that appellant had called and threatened to drive his truck through her residence. Later the same day, Thatcher obtained a Domestic Violence Civil Protection Order against appellant for herself and her child. No record exists of the service of the protection order, but Adams County Sheriff's Deputy Don Adams telephoned appellant and advised him about the terms of the protection order.

{¶ 5} Despite the protection order, however, appellant and Thatcher continued to communicate. Around this time, appellant became upset when he learned that Lowe had been staying with Thatcher.

{¶ 6} On September 29, 2018, appellant returned to Adams County from a job in West Virginia. At approximately 5:00 AM, appellant tried, unsuccessfully, to call Thatcher. Appellant testified that he called her because he had nowhere to stay and could not get money until the bank opened. Appellant then appeared at Thatcher's residence around 6:00 AM. When Thatcher realized appellant was at her residence, she called 911. However, appellant left before law enforcement arrived. Also, during this incident Lowe was present at the residence. When law enforcement arrived, Lowe was agitated and stated that the next time appellant appeared at the residence, he would take care of things himself and not bother to call the police.

{¶ 7} After appellant left the residence, he drove to Maysville, Kentucky and while enroute, spoke with Thatcher on the telephone several times. Appellant also cut his wrist with a knife.

{¶ 8} Later that morning, at approximately 10:50 AM, appellant again called Thatcher and told her that he was coming to her residence to get the clothes that he left there earlier that morning. Thatcher was on the telephone with Lowe when she received appellant's call, and this prompted Lowe to return to the residence.

{¶ 9} After appellant arrived at Thatcher's residence, he sat in his vehicle while Thatcher's daughter, Shauna, brought a bag of clothes to him. Shortly after appellant received the clothes, Lowe pulled into the driveway. Appellant then told Shauna to go inside the house. Shauna testified that appellant then chased Lowe with a knife and, after she ran into the house, she observed appellant throw his hands up and down with a knife in hand.

{¶ 10} At this time, Thatcher called 911 and said, "they are out there fighting on my porch and they have a knife, they're going to kill each other." Thatcher's daughter, Alliysa, viewed some of the confrontation from the kitchen window. Alliysa observed appellant jump out of his truck and into the back of Lowe's truck, then chase Lowe with a knife toward the porch. Once they got to the porch, Alliysa could no longer see Lowe.

{¶ 11} Appellant testified that he observed Lowe enter the driveway, exit his truck and stand next to his truck bed with a knife in hand. Lowe, acting in an aggravated manner, said something to appellant that prompted him to tell Shauna to go into the house. At that point, appellant grabbed a knife from his truck and jumped into the back of Lowe's truck. Eventually, both men faced each other with Lowe holding a knife. Appellant ran to Lowe, punched him with his empty hand and, as Lowe backpedaled, he fought and swung. During the fight, appellant fell in the mud and Lowe struck him with his fist and stabbed him in the head and shoulder. According to appellant, Lowe did not turn and attempt to run. Also, appellant did not remember stabbing Lowe on the porch, but did remember Lowe falling over and appellant tell a person at the scene, "I think I killed him." Appellant also testified that he suffered cuts to his head and a shoulder wound from Lowe's knife, but none of appellant's injuries appeared to be life threatening. Appellant then surrendered to law enforcement without incident.

{¶ 12} Officers at the scene found a large knife stuck into the front porch near Lowe, presumably placed there by appellant after the incident. Officers also found a second, smaller knife next to Lowe's body. A crime scene investigator testified that the smaller knife could have been used to inflict serious physical harm or death.

{¶ 13} When EMS arrived, Lowe was not breathing, had no pulse, exhibited large wounds to

both arms, minor cuts to his neck and a large tissue avulsion on the top of his head. Lowe's most serious injury was a large wound to his abdomen.

{¶ 14} The coroner testified that most of Lowe's stab wounds would not have been immediately fatal and could have been treated, but the injury to his abdomen cut through the aorta and inferior vena cava and were likely the fatal injuries. Also, the injuries to Lowe's abdomen did not appear to be consistent with repeated stabbing, but more likely two distinct stab wounds.

{¶ 15} The investigation also revealed that both knife blades contained Lowe's DNA and appellant excluded as a DNA contributor. Blood on the larger knife's handle contained a DNA mixture, with Lowe as one contributor. Appellant, however, was inconclusive as a possible contributor to the mixture. Lowe was also excluded as a contributor to the DNA on appellant's hand, although additional DNA did appear but in levels too low for comparison. Also, a small section of appellant's t-shirt contain blood with Lowe's DNA, and appellant excluded as a contributor. The DNA technician acknowledged that only a small portion of the shirt was tested, and blood from other people could have been on the shirt. Also, a DNA swab from appellant's face revealed appellant's blood and excluded Lowe as a contributor.

{¶ 16} At the conclusion of the trial, the jury found appellant guilty on both counts of murder.[2] The trial court then merged the two counts for purposes of sentencing and sentenced appellant to serve a fifteen years to life in prison. Appellant timely filed a notice of appeal.

---

[2]On October 25, 2018, an Adams County Grand Jury returned an indictment that charged appellant with murder in violation of R.C. 2903.02(A) and a second count of murder in violation of R.C. 2903.02(B). R.C. 2903.02(A) provides in relevant part that "[n]o person shall purposely cause the death of another." R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." The underlying offense of violence supporting the second count was felonious assault in violation of R.C. 2903.11, a second-degree felony.

I.

{¶ 17} In his first assignment of error, appellant asserts that the trial court misinterpreted the self-defense statute and failed to instruct the jury on self-defense.

{¶ 18} On March 28, 2019, approximately one month prior to the trial, the amended version of R.C. 2901.05, the statute that governs self-defense as an affirmative defense, became effective. R.C. 2901.05(B)(1); WEAPONS, 2018 Ohio Laws File 159 (Am. Sub. H.B. 228). The parties agreed that the amended version of the statute applied at the trial in this case. As amended, R.C. 2901.05(B)(1) states:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

The amended statute shifts the burden of proof on the affirmative defense of self-defense from the defendant to the prosecution, provided that "there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence." *Id.*

{¶ 19} Generally, a trial court has broad discretion to decide how to fashion jury instructions. *See State v. Hamilton*, 4th Dist. Scioto No. 09CA3330, 2011–Ohio–2783, ¶ 69. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. In addition, a trial court may not refuse a requested instruction if it is a "correct, pertinent statement of the law" and "appropriate to the

facts." *Hamilton* at ¶ 69 (internal quotes omitted); quoting *Smith v. Redecker*, 4th Dist. Athens No. 08CA33, 2010–Ohio–505, ¶ 51; quoting *Smith v. Lessin*, 67 Ohio St.3d 487, 493 (1993).

{¶ 20} "In determining whether to give a requested jury instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction." *Hamilton* at ¶ 70 (internal quotes omitted); quoting *Redecker* at ¶ 52; quoting *Lessin* at 494. A trial court is therefore vested with discretion "to determine whether the evidence is sufficient to require a jury instruction." *State v. Mitts*, 81 Ohio St.3d 223, 228, 690 N.E.2d 522 (1998); *see also State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989), paragraph two of the syllabus. "If, however, the evidence does not warrant an instruction a trial court is not obligated to give the requested instruction." *Hamilton* at ¶ 70 (internal quotes omitted); quoting *Redecker* at ¶ 52; quoting *Lessin* at 494. Thus, "'we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge.'" *Id*. at ¶ 70; quoting *Redecker* at ¶ 52. The term 'abuse of discretion' implies that a court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 21} In the case sub judice, appellant testified that he acted in self-defense and his counsel requested a self-defense jury instruction. However, after the trial court reviewed the evidence and considered the parties' arguments, the court denied appellant's request for the jury instruction. The court pointed out that the evidence established that appellant was not permitted to be at the residence due to the protection order and that he also did not comply with his duty to retreat.

{¶ 22} Appellant, however, contends that the parties presented sufficient evidence at trial to submit to the jury the issue of whether he acted in self-defense. Appellant argues that, under R.C. 2901.05(B)(1), the language "tends to support" implies that an accused's burden to present evidence

sufficient to obtain a jury instruction is "extremely low." Yet, elsewhere in appellant's brief he cites the same standard that applied to the assertion of self-defense under the prior version of R.C. 2901.05.

{¶ 23} Prior to the statutory amendment, it was well-settled that "[t]he proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus; *see also State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 24 (quoting *Melchior*). Evidence is sufficient where a reasonable doubt of guilt has arisen based upon [the affirmative defense]." *Melchior* at 20. "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* Thus, "[a]s a matter of law the trial court cannot give a jury instruction on an affirmative defense if a defendant fails to meet this burden." *State v. Schwendeman*, 4th Dist. Athens No. 17CA7, 2018-Ohio-240, 104 N.E.3d 44, ¶ 19.

{¶ 24} Appellant cites the definition of "tend" in support of his argument that a less demanding standard should apply under newly amended R.C. 2901.05. Black's Law Dictionary defines "tend" as follows:

> 1. To be disposed toward (something). 2. To serve, contribute, or conduce in some degree or way; to have a more or less direct bearing or effect. 3. To be directed or have a tendency to (an end, object, or purpose).

TEND, *Black's Law Dictionary* (11th Ed. 2019). R.C. 2901.05(B)(1) states that, to place the burden on the State to prove beyond a reasonable doubt that an accused did not act in self-defense, evidence

must be presented that "tends to support that the accused person used the force in self-defense." Placed in context, the phrase "tends to support" does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction. In order for evidence that "tends" to support an affirmative defense, it must be sufficient to raise a question in the mind of a reasonable juror, as is already required under the existing standard set forth in *Melchior*. Here, appellant did not meet this standard.

{¶ 25} "To establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002); citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

{¶ 26} In the case sub judice, we find no evidence to create a question in the minds of reasonable jurors regarding the first and third elements—that appellant was "not at fault in creating the situation giving rise to the affray" and did not violate his duty to retreat. Here, the appellee presented evidence that a protection order had been issued and that order did not permit appellant to have contact with Thatcher and their daughter. Moreover, a deputy sheriff informed appellant about the existence of the protection order, and appellant even testified that he knew of the order, but nevertheless continued to contact the protected persons after the order's issuance. Appellant also testified that he left Thatcher's residence on the morning of the incident because the police had been called and he knew that he should not be there. It is also undisputed that when Lowe arrived at

Thatcher's residence, appellant was sitting in his truck. Had appellant not been at the residence, or had he remained in his truck, the altercation would not have occurred. Instead, appellant exited his truck, grabbed a knife and jumped into Lowe's truck. This evidence establishes that appellant was at fault in creating the situation that gave rise to the altercation.

{¶ 27} Appellant also argues, citing *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, that he was not bound by the protection order because proper service had yet to be effectuated. However, the legislature explicitly overruled Smith when it amended R.C. 2919.27, which criminalizes the violation of a domestic violence protection order. PROTECTION ORDERS—VIOLATION, 2017 Ohio Laws File 10 (Sub. S.B. 7) ("The amendments made by this act to division (D) of section 2919.27 of the Revised Code are intended to supersede the holding of the Ohio Supreme Court in *State v. Smith* (2013), 136 Ohio St.3d 1, so that unperfected service of a protection order or consent agreement does not preclude a prosecution for a violation of division (A) of that section."). R.C. 2919.27(D) provides:

> In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

{¶ 28} In the case sub judice, the evidence affirmatively established that a law enforcement officer informed appellant about the protection order's existence. As a result, the protection order was effective, and appellant could be held criminally liable for a violation of the order.

{¶ 29} Appellant further claims that his own testimony set forth sufficient evidence to put the question to the jury of whether he acted in self-defense. In particular, appellant testified that when

Lowe pulled into the driveway, he exited his truck with a knife and appeared to be agitated. In response to Lowe's actions, appellant grabbed a knife and exited his truck. Appellant testified that he and Lowe faced each other, that appellant threw the first punch with his free hand, caused Lowe to backpedal, but despite the punch, Lowe did not run or turn his back until he succumbed to the fatal abdominal wound.

{¶ 30} We believe, however, that none of appellant's testimony undermines the evidence that appellant was at fault in creating the situation that gave rise to the fight. *See State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415 (Jan. 22, 2002) ("Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense."). Appellant appears to argue that Lowe shares some responsibility for the events that led to their confrontation. While the evidence might arguably support such a finding, what matters for purposes of appellant's assertion of self-defense is whether appellant was at fault and here, all of the evidence, including appellant's testimony, supports that finding. Lowe allegedly exited his truck with a weapon, but appellant did the same. Moreover, by his own admission appellant initiated the violent contact with Lowe, which did not cease until Lowe's death. *Hendrickson* at ¶ 27 ("[T]he 'not-at-fault' requirement generally means that the defendant must not have been the initial aggressor in the incident.") Here, we find no evidence adduced at trial from which a reasonable juror might infer that appellant was not at fault in creating the situation that gave rise to the fight.

{¶ 31} Additionally, no evidence exists that appellant complied with his duty to retreat to avoid the use of lethal force. "[I]n most cases, 'a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation.'" *State v. Thomas*, 1997-Ohio-269, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339, 1342; quoting *State v. Williford*, 49 Ohio St.3d 247, 250,

551 N.E.2d 1279 (1990). Appellant testified that his truck was not blocked in Thatcher's driveway and, as a result, he could have moved his truck and left the residence at any time. In other words, appellant had a reasonable means of retreat. His failure to make an attempt to retreat is another reason why the evidence did not tend to support the view that he acted in self-defense.

{¶ 32} In sum, we believe that the trial court's denial of the self-defense jury instruction did not constitute an abuse of discretion. *See Hendrickson* at ¶ 24 ("A trial court does not err by refusing to instruct on self-defense when the defendant fails to produce sufficient evidence to support that defense.").

{¶ 33} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

{¶ 34} In his second assignment of error, appellant asserts that the trial court erred by allowing evidence that Evid. 404(B) prohibits. In particular, appellant argues that the trial court should not have admitted testimony that appellant had made threats to Thatcher and had a domestic violence protection order issued against him days before the incident. Appellant reasons that the State sought the admission of the protection order only to show that appellant is a violent person who had the capability or demeanor to commit a murder.

{¶ 35} In response, the State argues that the protection order is relevant to appellant's contention that he acted in self-defense and is, therefore, admissible in evidence.

{¶ 36} "The trial court has broad discretion in the admission or exclusion of evidence; appeals of these decisions are reviewed under an abuse-of-discretion standard of review." *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 65 (4th Dist.). "An abuse of discretion occurs when the

trial court makes a decision that is unreasonable, arbitrary, or unconscionable." *State v. Johnson*, 4th Dist. Ross No. 17CA3615, 2018-Ohio-3720, ¶ 13. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Generally, all relevant evidence is admissible." *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 34, citing Evid.R. 402.

{¶ 37} Appellant relies on Evid.R. 404(B) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *

Evid.R. 404(B). "'[E]vidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."'" *State v. Wilkinson*, 64 Ohio St.2d 308, 317, 415 N.E.2d 261 (1980), quoting *United States v. Turner*, 423 F.2d 481, 483-484 (7th Cir.1970), quoting *United States v. Wall*, 225 F.2d 905, 907 (7th Cir.1955).

{¶ 38} Evid.R. 403(A) provides that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Unfair prejudice is not "'damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89, quoting *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir.1986).

{¶ 39} In the case sub judice, the State had to face the possibility that it would have the

burden to prove, beyond a reasonable doubt, that appellant did not act in self-defense. R.C. 2901.05(B)(1). As mentioned, supra, the three elements required to establish self-defense are: "(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger." *Barnes* at 1244. Here, we believe that the protection order is relevant to the first and third elements.

{¶ 40} In our analysis of appellant's first assignment of error, we concluded that insufficient evidence was presented with respect to the first element of appellant's self-defense claim. We did so in large part because the evidence established that appellant appeared at Thatcher's residence in violation of a protection order. As for the third element regarding the duty to retreat, it is well-established that "there is no duty to retreat when one is assaulted in one's own home." *State v. Thomas*, 77 Ohio St.3d 323, 327, 673 N.E.2d 1339, 1342-43. This exception to the duty to retreat extends to the use of lethal force in self-defense against a cohabitant with an equal right to be in the home. *Id.* at 328, 1343. In this case, the evidence showed that appellant at one time resided, on and off, with Thatcher at her residence—the same residence where appellant killed Lowe. Consequently, whether the residence remained appellant's residence is relevant to his contention that appellant acted in self-defense. However, through the introduction of the protection order into evidence, the State established that appellant did not reside with Thatcher. To the contrary, appellant was prohibited from going to Thatcher's residence. Thus, the protection order is relevant to the first and third elements of appellant's contention that appellant acted in self-defense.

{¶ 41} Accordingly, we believe that the admission into evidence of the protection order did

not violate Evid.R. 404(B) because it was not admitted to prove appellant's bad character and that he acted in conformity therewith, but instead to prove that he did not act in self-defense. The admission of the protection order did not violate Evid.R. 403(A) because the risk of unfair prejudice did not substantially outweigh its probative value. The protection order is relevant to two of the three elements required to establish the affirmative defense of self-defense. Moreover, the prejudice caused to appellant's self-defense claim was not unfair, i.e., it did not suggest the jury reach a decision based on an improper basis. Thus, because the admission of the protection order did not violate Evid.R. 404(B) or Evid.R. 403(A), we believe that the trial court's decision to allow it to come into evidence did not constitute an abuse of discretion.

III.

{¶ 42} In his third assignment of error, appellant asserts that he received ineffective assistance of counsel because trial counsel did not object to admission of the protection order and the alleged threats that preceded it.

{¶ 43} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); accord *Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) ("defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence"). To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and

deprived the defendant of a fair trial.  E.g., *Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85.  "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both.  *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶ 44} In the case sub judice, appellant cannot show that his counsel's failure to object to the admission of the protection order into evidence prejudiced his defense.  As we discussed with respect to appellant's second assignment of error, the protection order was relevant and admissible under the Ohio Rules of Evidence.  As a result, even if appellant's trial counsel had lodged an objection, the protection order would have nevertheless been admitted into evidence over that objection.  Appellant therefore cannot establish any prejudice attributable to counsel's failure to object.

{¶ 45} Consequently, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV.

{¶ 46} In his fourth assignment of error, appellant asserts that his convictions are against the sufficiency and the manifest weight of the evidence.  In particular, appellant argues that the evidence established that he acted in self-defense, or that he committed only voluntary or involuntary manslaughter, not murder.

{¶ 47} The appellee responds that the witnesses and exhibits establish sufficient evidence for

each element of the offense, and, moreover, the jury's verdict is not against the manifest weight of the evidence.

{¶ 48} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶ 49} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶ 50} "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. A trier of fact is free to believe all, part, or none of the testimony of any witness, and appellate courts generally defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor,

gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶ 51} In the case sub judice, appellant was convicted of two counts of murder: (1) R.C. 2903.02(A) for purposely causing the death of another, and (2) R.C. 2903.02(B) for causing the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony," in this case felonious assault.

{¶ 52} Felonious assault, a second-degree felony, is defined under R.C. 2903.11:

(A) No person shall knowingly * * *:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

R.C. 2903.11(A)(2). R.C. 2901.22 defines the relevant mental states as follows:

(A) A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 53} Appellant first argues that the evidence established that he acted in self-defense. However, as we discussed in our analysis of appellant's first assignment of error, we agree with the trial court's conclusion that the evidence adduced at trial did not warrant a self-defense jury

instruction.

{¶ 54} Appellant's other argument is that the evidence is insufficient to convict him for anything other than voluntary or involuntary manslaughter. Here, appellant did not deny that he stabbed and killed Lowe. Therefore, the only question regarding the sufficiency and weight of the evidence concerns appellant's mental state.

{¶ 55} In the case sub judice, we believe that the State presented substantial competent and credible evidence to support the jury's finding that appellant purposely caused Lowe's death. According to appellant, before he exited his truck Lowe had already exited his truck and stood with a knife in hand. However, appellant's testimony is not consistent with the testimony of the other eyewitnesses—Klover Thatcher, Shauna Thatcher, and Alliysa Thatcher. Their testimony, along with other evidence, instead supports the inference that appellant exited his truck with the specific intent to kill Lowe.

{¶ 56} Klover Thatcher testified that she was on the phone with appellant when Lowe arrived. She testified that appellant told her "Oh, there's Willie I'm going to fucking stab that mother fucker." Thatcher then observed appellant exit his truck and grab a knife.

{¶ 57} Shauna Thatcher, Klover's daughter, brought clothes to appellant and stood by his truck immediately before the incident. When Lowe arrived, appellant told Shauna to go inside the house. Shauna further testified that Lowe was not yet parked in the driveway when appellant exited his truck, grabbed a large knife and began to pursue Lowe. According to Shauna, the two men faced off in the grass in front of the house, at which time she heard Lowe say to appellant, "Matt, you don't want to do this." Shauna then ran inside her home, locked the door, looked out the window and observed appellant throwing his hands up and down, with the large knife in hand. After that,

Shauna covered her eyes and ears and did not see the fight.

{¶ 58} Alliysa Thatcher, also Klover Thatcher's daughter, testified that when Lowe arrived, appellant exited his truck and jumped in the back of Lowe's truck. Lowe then "came around and [Appellant] pushed himself off [Mr. Lowe]'s truck and started chasing [Mr. Lowe]." To get away from appellant, Lowe ran backwards with his hands up. Alliysa did not see anything in Lowe's hands and he ended up running to the porch. Appellant and Lowe then met at the bottom of the stairs, where Alliysa observed appellant swing his arms. She could not see Lowe or his actions on the stairs.

{¶ 59} Taken together, this testimony supports a finding that appellant exited his truck in order to kill Lowe, not to defend himself. In these accounts, appellant is the aggressor. Appellant initiated the encounter and, when Lowe suggested to appellant that he reconsider what he was doing, appellant instead persisted. Even appellant testified that he first used force by punching Lowe.

{¶ 60} The intent to kill may also be inferred from the weapon that appellant chose to use. Appellant opted to use a very large knife. Among the many injuries to Lowe, the coroner testified that Lowe received two stab wounds to his left lower abdomen that penetrated deep into his body. One wound sliced Lowe's intestine in half and cut through a significant portion of his mesentery, the tissue that supplies blood to the intestines. The second stab wound lacerated Lowe's abdominal aorta and inferior vena cava. The coroner explained that the aorta "is the main artery that comes out the top of the heart sending off branches to the head, the arms, and then it goes all the way down along your spine and then branches off to your legs." Lowe's aorta was almost completely severed at his spine, just before it split off to his legs. The inferior vena cava, the major vein that brings blood from the legs along the spine and back to the heart, was also almost completely severed.

These stab wounds caused massive internal blood loss. A reasonable juror could infer from appellant's choice of weapon, and the deep, penetrating wounds to Lowe's abdomen, that appellant attacked him with the intent to kill.

{¶ 61} In the case sub judice, it was the jury's prerogative to reject appellant's version of events and infer, from the testimony and evidence adduced at trial, that appellant acted with the specific intent to kill Lowe. R.C. 2903.02(A). The same testimony and evidence also supports the jury's finding that appellant knowingly caused physical harm to Lowe, which was the proximate cause of his death, to support appellant's conviction under R.C. 2903.02(B).

{¶ 62} Thus, in light of the foregoing, we cannot conclude that appellant's convictions are against the manifest weight of the evidence, that the jury lost its way, or that appellant's convictions constitute such a manifest miscarriage of justice that they must be reversed. Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. Accordingly, we reject appellant's claim that sufficient evidence does not support the convictions.

{¶ 63} Therefore, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial courts' judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.