[Cite as *State v. Henderson*, 2019-Ohio-4581.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                             No. 108127

    v.                              :

EDDIE J. HENDERSON, III,                :

    Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 7, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627845-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar and Nathaniel Tosi, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Eddie Henderson, III ("Henderson"), appeals from his conviction for felonious assault, arguing that his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm.

## Procedural and Substantive History

{¶ 2} The events underlying this case took place on April 12, 2018. That morning, victim Lorenzo Kane ("Kane") had an appointment to get a haircut with his barber, Henderson, at the Clips of Excellence barber shop in Cleveland Heights, Ohio. Kane had been a regular customer of Henderson's for several months. Kane arrived early to his appointment. Initially, Kane waited in his car, which was parked in the parking lot behind the shop. At one point, Kane decided to wait inside the shop.

{¶ 3} While he waited, Kane was singing to himself. Eventually, Henderson arrived through the shop's back door. Kane asked Henderson why he was late. According to Kane, he was upset but relatively calm. According to Henderson and another barber, Kane was almost immediately aggressive with Henderson and threatened him physically. Henderson decided to remove himself from the situation, telling Kane that one of the other barbers could cut his hair. Henderson went outside and opened the front passenger door of his car. Kane followed Henderson outside. According to Kane, Henderson yelled at him, continuing their disagreement, so he walked over to Henderson's car. According to Henderson, Kane followed him, got too close to him, and did not back off enough when Henderson asked him to do so. As a result of that, according to Henderson, he shot Kane. The first shot struck Kane's leg, causing him to collapse to the ground between two other parked vehicles. The next shot hit Kane in his torso. Kane brought his right hand up to protect his face, and the third shot went through his hand and grazed his jaw.

{¶ 4} Henderson immediately went back inside the shop, told another barber to call 911, and set his gun down on a table between two barber stations. Officers arrived, transported Kane to the hospital to be treated, and arrested Henderson, who immediately identified himself as the shooter and stated that he fired his gun in self-defense.

{¶ 5} Henderson was charged with one count of attempted murder in violation of R.C. 2923.02 and 2903.02(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of felonious assault in violation of R.C. 2903.11(A)(2). Each of the three counts carried one- and three-year firearm specifications.

{¶ 6} A jury trial began on November 7, 2018. The state called Kane, another barber, another customer, and several law enforcement officers as witnesses. The state also introduced surveillance footage showing the first part of the shooting. Following the state's case, Henderson made a Crim.R. 29 motion, that the court denied. Henderson then called a different barber, and Henderson testified on his own behalf. At the close of his case, Henderson renewed his Crim.R. 29 motion, which the court again denied.

{¶ 7} On November 15, 2018, the jury returned a verdict of not guilty as to attempted murder, not guilty as to felonious assault alleging serious physical harm, and guilty as to felonious assault by way of a deadly weapon.

{¶ 8} On December 17, 2018, the court sentenced Henderson to three years on the felonious assault charge, to be served consecutively to three years for the firearm specification, for an aggregate term of six years.

{¶ 9} Henderson appeals, presenting a single assignment of error for our review.

**Law and Analysis**

{¶ 10} In Henderson's sole assignment of error, he argues that his conviction for felonious assault is against the manifest weight of the evidence. Specifically, he asserts that his conviction should be overturned because the jury implicitly accepted his affirmative defense of self-defense for two counts while rejecting it for the third count, despite the evidence supporting all three counts being identical. Further, he argues that the jury lost its way by finding him guilty despite his clearly established case of self-defense.

{¶ 11} A manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 678 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 12} For Henderson to successfully assert that he acted in self-defense, he had the burden to show that (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of great bodily harm; and (3) the only way of escape was to react by means of force.[1] *State v. Thomas*, 77 Ohio St.3d 323, 673 N.E.2d 1339 (1997). After a thorough review of the record, we do not find that the jury lost its way.

{¶ 13} The parties disagree as to who created the situation leading to the shooting. Henderson maintains that Kane was acting erratically and followed him outside, threatening physical violence. Although trial testimony showed that Kane did threaten Henderson inside the barber shop, and the surveillance footage clearly shows Kane exit the barber shop after Henderson, there was no evidence that the altercation between the men was violent until the moment Henderson pointed his gun at Kane. In fact, the surveillance footage shows Kane taking steps backward away from Henderson when Henderson pointed his gun at Kane. Henderson himself admitted that Kane stepped back, but asserted that Kane was still too close to him and he still felt scared and threatened.

---

[1] On March 28, 2019 (several months after Henderson's trial), the Ohio legislature amended R.C. 2901.05. The statute now provides that "[i]f, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1). Henderson acknowledges this change, but does not assert that the current version of the statute applies retroactively to him.

{¶ 14} Henderson was also required to show that he had a bona fide belief that he was in imminent danger of great physical harm. There was no evidence presented to show that Kane had a weapon on him, or that he actually tried to initiate a physical fight with Henderson. Even if Henderson had a good faith subjective belief that he was in imminent danger of great physical harm, he cannot establish the other two requisite factors.

{¶ 15} Henderson has not established that he was unable to retreat, and that his only way of escape was to react with force. While Henderson did attempt to leave the situation by leaving the barber shop, he was unable to articulate why he did not get in his car and drive away. He testified that he went to his passenger seat to get his wallet out of the glove box, and that Kane followed him too closely for him to drive away. A review of the record and the surveillance footage undermines Henderson's testimony as to this point.

{¶ 16} Finally, even if Henderson had established the foregoing factors to show that self-defense was necessary, he is unable to justify his use of deadly force in self-defense. For a defendant to use deadly force in self-defense, he must have a bona fide belief of imminent danger or death and that the only means of escape is the use of such deadly force. *State v. Warmus*, 197 Ohio App.3d 383, 967 N.E.2d 1223 (8th Dist.2011.). Again, there is no evidence that Kane was armed. Kane tried to run away from Henderson, but the first gunshot wound prevented him from doing so. Even if Henderson could justify his first shot, there is no evidence in the record

that would support his decision to fire two subsequent shots, including one shot at the victim's head.

{¶ 17} Henderson also argues that his conviction was against the manifest weight of the evidence because the not guilty verdicts on two counts were inconsistent with the guilty verdict on one count of felonious assault. Henderson asserts that these verdicts show that the jury accepted a singular affirmative defense for attempted murder and felonious assault causing serious physical harm, while rejecting that affirmative defense for felonious assault by way of a deadly weapon. Henderson argues that this is problematic because the evidence supporting all three counts was identical.

{¶ 18} Ohio law is well-settled that inconsistency in a verdict does not arise out of inconsistent responses to different counts; it only arises out of inconsistent responses to the same count. *State v. Brown*, 12 Ohio St.3d 147, 147, 465 N.E.2d 889 (1984). Further, while the same underlying conduct resulted in each of the three counts, each count had distinct elements unrelated to the other offenses. For example, felonious assault in violation of R.C. 2903.11(A)(1) provides that no person shall knowingly cause serious physical harm to another or to another's unborn. Felonious assault in violation of R.C. 2903.11(A)(2) provides that no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. For a conviction under subsection (A)(1), the state must prove beyond a reasonable doubt that the defendant knowingly caused serious physical harm. A showing of serious physical

harm is not necessary under subsection (A)(2), although that subsection requires the state to prove beyond a reasonable doubt that the defendant used a deadly weapon or dangerous ordnance. Therefore, although Henderson asserted a singular affirmative defense with respect to all three counts, his assumption that the jury must have accepted his affirmative defense for two counts is incorrect.

{¶ 19} In light of the foregoing, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice. Therefore, we overrule Henderson's assignment of error.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

RAYMOND C. HEADEN, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR