[Cite as *State v. Smith*, 2020-Ohio-5119.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                        Court of Appeals No. WD-19-070

    Appellee                                   Trial Court No. 2018CR0610

v.

Dale W. Smith                                     **DECISION AND JUDGMENT**

    Appellant                                  Decided:  October 30, 2020

* * * * *

Paul Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**MAYLE, J.**

## Introduction

{¶ 1} Defendant-appellant, Dale W. Smith, appeals the August 16, 2019 judgment of the Wood County Court of Common Pleas, convicting him of felonious assault and sentencing him to five years in prison.  For the following reasons, we affirm.

**Facts and Procedural History**

{¶ 2} Smith, who testified in his own defense, is a resident of Portage, Ohio in Wood County. Smith has known the victim in this case, A.Z., for three years. During that time, Smith allowed her to live with him "off and on," but she was not living with him on December 9, 2018, the date of the assault. Smith described his relationship with A.Z. as sexual in nature and claimed that he paid her "every time" she came to his house.

{¶ 3} On December 9, 2018, A.Z. was at Smith's home. In Smith's words, after A.Z. had "done her thing," she asked for a ride to her home and to stop along the way for cigarettes. After they left in his car, the two returned to Smith's place so that he could retrieve his own cigarettes and cell phone. While still in the car—outside the house—the two argued. According to Smith, A.Z. told him that he had "better hurry up." In response, Smith "looked at her and said, 'You don't threaten me,'" and went inside to "roll some cigarettes."

{¶ 4} According to A.Z., she began honking the car horn while Smith was inside. She said that when Smith came back outside, he was "screaming and yelling." A.Z exited the car as Smith approached, and as she stood up, Smith "put his forearm against [her] body" and "pinned [her] against the car" and "punch[ed] [her] with his hand." A.Z. said that Smith "didn't stop" punching her until he had hit her "more than fifteen times," each time with a closed fist on the right side of her face. During the assault, A.Z. "tried to get away from [Smith] * * * several times." She denied striking him, either before or after the assault.

2.

{¶ 5} Smith offered a slightly different version of events. Smith testified that A.Z. "blew and blew" the car horn while he was inside, so he returned to the car to tell her that blowing a horn like that "in this neighborhood" is "the best way to get the police here." He said that when he walked outside, A.Z. was "sitting in the car" and "punch[ing] the [car] window." As he approached, A.Z. "stepped out of the car, and * * * punched [him] right in the face." Smith described the punch as a "light blow" to his cheek. Although he later acknowledged that he "probably could have" just walked away from A.Z. "if [he] had thought about it," Smith testified that he "restrained" A.Z. by placing her neck in a chokehold while "punching her in the face" with his other hand. He stated that he "only" remembers punching her "two or three times." He testified that he did this because he "was afraid she was going to kick [his] butt" so he tried to "defend" himself. Smith added that, as a 73 year old, he "can't take much punishment."

{¶ 6} Smith stated that after he released A.Z. from his grasp, she "stepped back four or five steps" and then came at him in a "windmill" motion with a closed fist. Smith thought to himself, "she didn't learn that she can't win this fight." Smith then called 911, twice, but the line disconnected because A.Z. was "trying to get" his phone." Smith was able to "walk[] away" from A.Z. to his house, and A.Z. did not follow him. As he was unlocking his door, the 911 dispatcher called Smith, and the call was played for the jury. Smith can be heard saying, "she thinks she can threaten me." Smith told the 911 operator that A.Z. hit him and that he "hit her back." At the end of the call, the 911 operator announced that A.Z. had just placed her own 911 call.

3.

{¶ 7} During A.Z.'s 911 call, she can be heard telling Smith, "you're dead." When speaking to the operator, A.Z. reported that she and Smith "had a fight" because "he wouldn't take [her] home." A.Z. described Smith as "older" but "strong" and said that he had "just kept punching [her] in the eye over and over."

{¶ 8} Wood County Deputy Sheriff Steven Deutschman was the first to arrive at the scene, followed by Deputy Cody Hullinger, and both testified at trial. The deputies observed that A.Z. was "hysterical" and she had some "swelling in the facial area." Both deputies were equipped with body cameras, and footage from the incident was played for the jury—which included Smith's statement to the authorities that he had "smacked the shit out of" A.Z. by punching her "five or six times with a closed fist." Also, Deputy Hullinger testified that he "noticed some red marks" and a "scratch" on Smith's right fist, which appeared to be "defensive mark[s]" from A.Z. "attempting to get him to stop punching her." By contrast, the deputy observed "no facial injuries on [Smith] correlating with what he said about [A.Z.] punching him."

{¶ 9} A.Z. was transported by ambulance to the Wood County Hospital. Paramedic Chad Dix testified that A.Z. had a "raised bruise" that was "the size of a golf ball" and some "abrasions to her nose and cheek." Records from the hospital established that A.Z. was treated for a "cervical sprain, facial contusion, and a nasal bone fracture * * * with minimal displacement." Upon A.Z.'s release from the emergency room, she was "strongly encouraged" to follow up with her primary care physician for a possible referral to an ear, nose, and throat specialist.

4.

{¶ 10} On January 17, 2019, Smith was indicted for felonious assault, in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree (Count 1) and domestic violence, in violation of R.C. 2919.25(A) and (D)(2), a misdemeanor of the first degree (Count 2).

{¶ 11} Prior to trial, Smith identified David Connell, Ph.D., as an expert witness to testify regarding A.Z.'s memory impairment. Dr. Connell had evaluated A.Z. in connection with another matter, and concluded that she had "global memory impairment" and "impairment [of her] short-term memory." The state moved to exclude any evidence from Dr. Connell on the basis that it would confuse and mislead the jury into believing that A.Z. was not competent to testify, and it argued that the evidence must be excluded as unduly prejudicial under Evid.R. 403(A). The trial court granted the state's motion to exclude Dr. Connell's testimony.

{¶ 12} Following a one-day trial on August 14, 2019, the jury returned a verdict of guilty as to the felonious assault offense and not guilty as to the domestic violence offense. On August 16, 2019, the trial court convicted the defendant of felonious assault and sentenced him to serve five years in prison and three years of postrelease control. The defendant appealed and raises two assignments of error for our review.

> Assignment of Error No. 1 – Whether the trial court erred by not permitting the defense to present evidence about a witness's short and longer term memory issues.

5.

Assignment of Error No. 2 – Whether or not the defendant received ineffective assistance of counsel.

**Law and Analysis**

**1. The exclusion of certain evidence regarding A.Z.'s memory issues**

{¶ 13} "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). For an error to have materially prejudiced a defendant's case means that it must have affected the outcome of the trial. *State v. Gonzalez*, 154 Ohio App.3d 9, 2003-Ohio-4421, 796 N.E.2d 12, ¶ 99 (1st Dist.). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 14} In his first assignment of error, Smith argues that the trial court abused its discretion when it prohibited the defense from presenting certain evidence relating to A.Z.'s memory issues—i.e., the trial court precluded Smith from offering Dr. Connell's testimony at trial, and the trial court precluded Smith from cross-examining A.Z. regarding any drugs she may have been taking at the time of the incident.

{¶ 15} We will address Smith's arguments relating to Dr. Connell first. Dr. Connell performed a psychological evaluation of A.Z. on April 23, 2019, for an entirely different case. In a written report (which was obtained by Smith's defense counsel),

6.

Dr. Connell states that he evaluated A.Z. at the Wood County Detention Center, where she was being detained following a "domestic incident involving her and a neighbor"—not Smith—and the report goes on to chronicle A.Z.'s history of physical abuse, sexual assault, and mental illness. Dr. Connell evaluated A.Z. at the request of The Cocoon, a Wood County agency that provides emergency shelter and other services to victims of domestic violence and sexual abuse. It is not clear who provided a copy of this report to Smith's defense counsel. Regardless, Smith wanted to call Dr. Connell to testify regarding his opinion (as stated in this report) that "[i]n general, [A.Z.] has global memory impairment, as well as other cognitive deficits" and "impairment [of her] short-term memory."

{¶ 16} During an oral argument just moments before the trial began, the defense argued that Dr. Connell's testimony was being offered as "extrinsic evidence" to "attack[]" A.Z.'s "credibility" under Evid.R. 616(B), which provides that a "defect of capacity [or] ability * * * to * * * remember * * * may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." The trial court rejected this argument and refused to allow Dr. Connell to testify, concluding that it would be "unconscionable to allow [Smith] to benefit from his own criminal conduct as it may affect the victim's ability to recall certain events"—suggesting that the trial court may have believed that Smith caused A.Z.'s memory issues. Dr. Connell, however, offered no opinion as to the cause of A.Z.'s memory impairment in his report, and there are no facts to suggest that he was even aware of the state's case against Smith.

7.

{¶ 17} On appeal, Smith argues that Dr. Connell's testimony was "critical" to his defense because it demonstrates that A.Z. had "clear * * * memory issues." Yet, in the next sentence, Smith suggests that A.Z. was simply lying, as opposed to suffering genuine memory issues. That is, Smith argues that A.Z. was "able to recall everything when questioned by the state" but could not "remember anything" during cross-examination.

{¶ 18} Smith implies that he should have been allowed to use Dr. Connell as a means to challenge the truthfulness of A.Z.'s testimony, but he does not explain how Dr. Connell's testimony would have made it any more or less probable that A.Z. was lying on the stand. Moreover, we cannot discern any basis to conclude that Dr. Connell's testimony would have been relevant for such purposes. Accordingly, to the extent Smith argues that A.Z. was not being truthful on the stand, Dr. Connell's testimony was wholly irrelevant to that issue and therefore properly excluded. *Accord State v. Smith*, 8th Dist. Cuyahoga No. 104553, 2017-Ohio-537, ¶ 11, fn. 1 (finding that a hospital record noting trace amount of alcohol in victim's blood "cannot be considered as a form of permissible impeachment with extrinsic evidence [under Evid.R. 616(B)] when the defense's theory was not that the victim was incapable of accurately observing, remembering, or relating because of intoxication, but [rather] that she committed perjury.").

{¶ 19} On the other hand, Smith also argues that Dr. Connell's testimony was admissible to establish A.Z.'s "[in]ability to recall events"—which requires a different analysis. Although the state argues that the trial court properly "barred testimony related

8.

to the competency of A.Z. to testify," Smith sought to attack her *credibility*, rather than her *competency* as witness, under Evid.R. 616(B). That is, under Evid.R. 616(B), "[a] defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Such defects are factors "relat[ing] to the credibility of the statements made by [the witness]" rather than the competency of the witness under Evid.R. 601. *Turner v. Turner*, 67 Ohio St.3d 337, 343, 617 N.E.2d 1123 (1993). *See also State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, ¶ 57 (Harsha, J. concurring) ("[E]vidence of the victim's drug use and mental illness are probative of the victim's capacity to observe, remember or relate * * * events [and] [t]hus, they should have been admitted under Evid.R. 616(B), which expressly permits the use of extrinsic evidence to challenge the witness's credibility on those bases.").

{¶ 20} Here, even if we assume that Dr. Connell's testimony regarding A.Z.'s memory issues was permissible under Evid.R. 616(B) and not unduly prejudicial under Evid.R. 403—and that the trial court therefore erred when it precluded Dr. Connell from testifying—Smith has not argued, much less shown, that the outcome of the case would have been different if Dr. Connell had testified. "Any error * * * which does not affect substantial rights shall be disregarded." Crim.R. 52(A). To affect a substantial right means that "the error must have been *prejudicial*: It must have affected the outcome of the [trial] court proceedings." (Emphasis in the original; quotation omitted.) *State v. Fisher*, 99 Ohio St.3d 127, 2003 Ohio-2761, 789 N.E.2d 222, ¶ 7. In this case, most of

9.

the evidence that supported Smith's convictions did not depend upon the strength of A.Z.'s memory at all—i.e., Smith testified, himself, that he restrained A.Z. by the neck and repeatedly punched her in the face, thereby breaking her nose and causing other injuries. And, as Smith stated to the authorities shortly after the incident, he "smacked the shit out of" A.Z. by punching her "five or six times with a closed fist."

{¶ 21} Moreover, Dr. Connell's testimony would have been cumulative of other evidence regarding A.Z.'s memory issues. At trial, defense counsel thoroughly questioned A.Z. about her inability to remember certain events that occurred at the hospital, as those events were recorded in her hospital records. In the midst of that testimony, A.Z. openly admitted that she suffered from a longstanding memory problem:

Q: Do you remember when the doctors first came in to talk to you you were standing in the hallway?

A: I don't remember. I have significant brain damage from being abused. * * *

Q: You were not kept over night at the hospital, were you?

A. I don't think so. I'm not sure. I have no sense of time. * * *

[M]y brain resets every 15 minutes and I forget. Unless it's like a traumatic event, I forget.

{¶ 22} So, again, even if we assume that the trial court erred by excluding Dr. Connell as a witness at trial, the trial court's error did not prejudice Smith because Dr. Connell's testimony was cumulative of other evidence—from A.Z. herself—of her

impaired memory. *See State v. Williams*, 3d Dist. Marion No. 9-07-61, 2008-Ohio-3887, ¶ 54 (Failure to allow defense to question victim regarding her "ability to remember" did not amount to plain error where the witness "readily admitted her faulty memory" at trial); *State v. Williams*, 6th Dist. Wood No. L-98-1299, 1999 WL 628691, *3 (Aug. 20, 1999) (Any error under Evid.R. 616(B) in barring defendant from using hospital report to question the victim about her substance abuse on night in question was harmless where the jury also heard the testimony of a witness that was consistent with that of the victim.).

{¶ 23} For these same reasons, Smith fails to demonstrate that he was prejudiced by his inability to question A.Z. regarding any drugs she may have been taking at the time of the incident. That is, when defense counsel was cross-examining A.Z., he asked what pain medicine she was prescribed after the incident. A.Z. confirmed that she took Motrin or Ibuprofen for pain, and then stated "I was already on Naproxen." Counsel followed up by asking "[w]hat other drugs were you on?" The state objected, and the trial court sustained the objection.

{¶ 24} On appeal, Smith argues that the answer "may have" established that A.Z. suffered from other medical conditions that "affected her ability to recall events that evening." But, as discussed above, because A.Z.'s memory deficiencies were well-established at trial—and because there was overwhelming evidence of Smith's guilt, most of which came from Smith himself—Smith does not establish that he was prejudiced by the trial court's curtailment of that line of questioning on cross.

11.

{¶ 25} For all of these reasons, Smith's first assignment of error is found not well-taken.

## 2. Smith did not receive ineffective assistance of counsel

{¶ 26} To prevail on a claim of ineffective assistance of counsel, Smith must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), quoting *Strickland* at 694.

{¶ 27} In his second assignment of error, Smith claims that his trial counsel was ineffective because he agreed to a self-defense jury instruction under the former version of R.C. 2901.05—which, he claims, was not applicable to his case because his trial occurred on August 14, 2019, more than four months after R.C. 2901.05 was amended on March 28, 2019.

{¶ 28} The former version of R.C. 2901.05 provided, in relevant part, that "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, *is upon the*

*accused.*" (Emphasis added.) On March 28, 2019, the statute was amended to shift the burden of proof, as to the self-defense affirmative defense, to the state. The statute now provides, in relevant part:

(A) * * * The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense *other than self-defense* * * * is upon the accused.

(B)(1) A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * *, *the prosecution must prove* beyond a reasonable doubt that the accused person did not use the force in self-defense * * *. (Emphasis added.)

{¶ 29} Smith maintains that he should have "receive[d] the benefit" of the change in the law because he was not tried until August 14, 2019—after the new statute went into effect. In response, the state counters that Ohio courts have "uniform[ly]" held that the current version of R.C. 2901.05 does "not * * * apply retroactively to conduct that occurred before the statute was amended."

{¶ 30} To the contrary, we find that Ohio courts have uniformly held that the current version of R.C. 2901.05 does not apply retroactively to appeals in which the criminal conduct *and trial* occurred before R.C. 2901.05 was amended on March 28,

13.

2019. *See, e.g.*, *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103 (no retroactive application where trial occurred 12 months before R.C. 2901.05 was amended); *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 32 (no retroactive application where trial occurred more than two months before R.C. 2901.05 was amended); *State v. Whitman*, 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140, ¶ 11 (no retroactive application where trial occurred almost two years before R.C. 2901.05 was amended); *State v. Moore*, 5th Dist. Muskingum No. CT2019-0030, 2020-Ohio-342, ¶ 10 (no retroactive application where trial occurred one month before R.C. 2901.05 was amended); *State v. Chavez*, 3d Dist. Seneca No. 13-19-05, 2020-Ohio-426, ¶ 38, fn. 4 (no retroactive application where R.C. 2901.05 was amended "[s]ubsequent to Chavez's trial"); *State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15, fn. 1 (applying the former version of R.C. 2901.05 because the statute was amended "[s]ubsequent to Crowe's trial"); *State v. Henderson*, 8th Dist. Cuyahoga No. 108127, 2019-Ohio-4581, ¶ 12, fn. 1 (defendant was tried "several months" before burden shifting amendment took place and did not assert that the [amended] version of the statute applies retroactively to him"); *In re S.D.*, 1st Dist. Hamilton Nos. C-180020, C-180021, C-180022, 2019-WL-2135449, *2, fn. 1 (applying the version of R.C. 2901.05 that was in effect "at the time that the offenses were committed" but also noting that "the General Assembly amended Ohio law on self-defense while S.D.'s appeal was pending"); *State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 18 (noting that "the parties agreed that the amended version of the statute applied" because the trial was held after

14.

"the amended version of R.C. 2901.05, * * * became effective"); *but see State v. Williams*, 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶ 12, fn. 1 (concluding that the trial court should have applied the former version of R.C. 2901.05—even though, as noted earlier in the opinion, trial occurred on May 6, 2019 (after the amendment)—in reliance upon *Koch* and *Crowe*, both of which involved trials that occurred before the statute was amended).

{¶ 31} We agree with this overwhelming authority from our sister districts. That is, R.C. 2901.05 does not apply retroactively to cases in which the criminal offense *and trial* occurred before R.C. 2901.05 was amended on March 28, 2019.

{¶ 32} But in this case, Smith's conduct occurred several months *before* R.C. 2901.05 was amended, and his trial occurred several months *after* R.C. 2901.05 was amended. As the Twelfth District recently held, "the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, through the passage of H.B. 228, appl[y] to all trials that were held or will be held, on or after the effective date of the statute, March 28, 2019. This holds true regardless of when the offense(s) may have occurred." *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 26, overruling *State v. Debord*, 12 Dist. Clinton No. CA2019-03-003, 2020-Ohio-57. Indeed, the express language of the amended statute plainly applies "at the trial of a person." R.C. 2901.05. Accordingly, we hold that amended R.C. 2901.05 applies, prospectively, to all trials that are held after the effective date of the statute. Smith's trial counsel was, therefore, deficient for agreeing to a self-defense jury instruction that relied upon the

15.

former (and inapplicable) version of R.C. 2901.05, which improperly placed the burden on Smith to prove that he used force in self-defense.

{¶ 33} But, we find that there is no evidence that Smith was prejudiced by counsel's deficient performance because the evidence did not support a self-defense jury instruction. The current version of R.C. 2901.05 states that a self-defense jury instruction is required if "there is evidence presented that *tends to support* that the accused person used the force in self-defense." (Emphasis added). Evidence "tends to support that the accused used * * * force in self-defense" when there is "sufficient evidence which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus. *Accord State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24 ("[i]n order for evidence that 'tends' to support an affirmative defense, it must be sufficient to raise a question in the mind of a reasonable juror, as is already required under the existing standard set forth in *Melchior*.").

{¶ 34} A defendant uses non-deadly force in self-defense when: (1) the defendant was not at fault in creating the situation giving rise to the altercation; and (2) the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. *State v. Owens*, 6th Dist. Lucas No. L-18-1056, 2019-Ohio-311, ¶ 9 quoting *State v. D.H.*, 169 Ohio App.3d 798, 2006-Ohio-6953, 865 N.E.2d 90, ¶ 30 (10th Dist); *accord*

16.

*State v. Chavez*, 3d Dist. Seneca Nos. 13-19-05, 13-19-06, 13-19-07, 2020-Ohio-426, ¶ 40.

{¶ 35} Here, there is no evidence that "tends to support" that Smith had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm, and that his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. *Id.* at ¶ 9. At trial, Smith admitted that he "could have" walked away from A.Z. after she delivered what he described as a mere "light blow" to his face. Instead, Smith stated that he restrained A.Z. by placing her in a chokehold while repeatedly punching her in the face "two or three" times. On the day of the incident, Smith told the authorities that he had "smacked the shit out of" A.Z. by punching her "five or six times with a closed fist." Most notably, Smith acknowledged at trial that A.Z. had started a fight that she "[could not] win." Accordingly, there is no evidence to suggest that Smith had reasonable grounds to believe and an honest belief that he was imminent danger of bodily harm and that the only means to protect himself from such danger was by the use of non-deadly force.

{¶ 36} Thus, although trial counsel was deficient when he agreed with the state that the jury should be instructed under the pre-amendment version of R.C. 2901.05— which was not applicable to Smith's trial because it occurred after R.C. 2901.05 was amended—Smith was not prejudiced by counsel's deficient performance. That is, Smith suffered no prejudice because he was not entitled to a self-defense jury instruction under the current version of R.C. 2901.05 given that there was no evidence that "tend[ed] to

17.

support" that Smith acted in self-defense. Thus, Smith's second assignment of error is not well-taken.

## Conclusion

{¶ 37} In conclusion, Smith's first assignment of error is not well-taken because Smith failed to show the relevancy of the proffered extrinsic evidence regarding A.Z.'s memory issues. Moreover, even if the trial court erred by excluding that evidence under Evid.R. 616(B), the trial court's error did not materially prejudice the outcome of this case given that it was duplicative of other evidence and the record contained overwhelming evidence of Smith's guilt.

{¶ 38} We also find Smith's second assignment of error not well-taken. Although Smith's counsel was deficient for agreeing to a jury instruction under the pre-amendment version of R.C. 2901.05, Smith failed to establish that he suffered any prejudice as a result of counsel's deficient performance. That is, there was no evidence that "tend[ed] to support" that Smith acted in self-defense—and, accordingly, he was not entitled to a jury instruction under the current version of R.C. 2901.05.

{¶ 39} The August 16, 2019 judgment of the Wood County Court of Common Pleas is therefore affirmed. Smith is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

18.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                    _____
                                                                    JUDGE

Arlene Singer, J.

                                                           _____
Christine E. Mayle, J.                                  JUDGE
CONCUR.

                                                           _____
                                                                    JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.